# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | |
|---|---|
| DAVID STANASZAK, Individually and on Behalf of All Others Similarly Situated, | Case No.: 18-cv-680 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | |
| | **Jury Trial Demanded** |
| KOHN LAW FIRM, S.C., and MIDLAND FUNDING, LLC, | |
| Defendants. | |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3.      Plaintiff David Stanaszak is an individual who reside in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family, or household purposes, namely a credit card debt.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from consumer transaction that included agreements to defer payment, namely a consumer credit card.

6. Defendant Kohn Law Firm, S.C. ("Kohn") is a Wisconsin law firm with its principal offices located at 735 North Water Street, Suite 1300, Milwaukee, WI 53202.

7. Kohn is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Kohn is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. Kohn is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

9. Defendant Midland, LLC ("Midland") is a limited liability company with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

10. Midland is engaged in the business of collecting debts, in that it purchases and receives assignment of consumer debts that are in default at the time Midland acquires them.

11. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

12. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6)

(emphasis added); *see Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'"); *Chenault v. Credit Corp Sols.*, 2017 U.S. Dist. LEXIS 197747, at *4-6 (E.D. Pa. Dec. 1, 2017); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017).

13.     The primary purpose of Midland's business, and Midland's principal purpose, is the collection of consumer debts.

14.     Midland's website contains an "FAQ" webpage, which states:

### Who is Midland?

Midland LLC is one of the nation's largest buyers of unpaid debt. For example, we may buy an unpaid credit card account. This happens when a company decides to sell the unpaid account rather than continue collection efforts. Midland LLC purchases accounts with an unpaid balance when:

- An account has gone at least 180 days without making a payment, or
- Someone paid less than the minimum monthly payment for at least 180 days, and
- The original creditor wishes to sell the right to collect on the account balance.

https://www.midlandfunding.com/faqs/.

15.     Midland is part of one of the largest debt buyer and debt collection outfits in the industry, with consumer debt portfolios in the hundreds of millions of dollars. The 2013 10-K filing for Midland's parent company, Encore Capital Group, Inc. ("Encore"), states that Encore

3

has "one of the industry's largest financially distressed consumer databases." (Form 10-K, 12/31/13, p. 2).

16.     According to Encore's 2013 Form 10-K, Encore *spent* more than $525 million to purchase consumer credit card accounts in the U.S. As Midland paid less than 10 cents on the dollar, the face value of those accounts is in the tens of billions of dollars. Encore purchased similar amounts of U.S. consumer credit card accounts in 2012 and 2011.

17.     Midland's role, generally is to purchase and receive assignment of consumer debts that are in default at the time Midland acquires them. Directly and indirectly through its affiliates, including Encore and MCM, Midland uses instrumentalities of interstate commerce, including the mail, telephone, banking systems and wire transfers in its business of aggregating and collecting debts, primarily charged off consumer credit card debts. The primary purpose of debt buyers like Midland is debt collection. *See, eg. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and … '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (quoting Pl.'s Reply Br.)).

18.     Midland by itself and through its attorneys, also files thousands of collection lawsuits against consumers in state courts annually. Wisconsin Circuit Court Access (CCAP), for example, shows that Midland filed 319 small claims lawsuits against Wisconsin consumers in the month of December 2017 alone, including one against the Plaintiff in this action. When Midland obtains judgment in such actions, usually by default, it frequently seeks to garnish consumers' wages by contacting the consumers' employers.

4

19.     Midland is a debt collector as defined in 15 U.S.C. § 1692a. *Barbato*, 2017 U.S. Dist. LEXIS 172984; *Tepper v. Amos Fin., LLC*, 2017 U.S. Dist. LEXIS 127697 *20-22.

20.     A company meeting the definition of a "debt collector" under the FDCPA (here, Midland) is vicariously liable for the actions of a second company (Kohn) collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

21.     Debt purchasers, including Midland, are also debt collectors as a matter of Wisconsin law.  On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

22.     Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added). On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

23.     Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

24.     Midland is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of Plaintiff's former Citibank, N.A. ("Citibank") consumer credit card account. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

5

25.     The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

26.     The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

27.     Midland uses attorneys, including Kohn, to collect allegedly defaulted debts that have been assigned to Midland. Midland uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

28.     A company meeting the definition of a "debt collector" (here, Midland) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

29.     Midland is a debt collector as defined in Wis. Stat. § 427.103(3).

## FACTS

### *False, Misleading and Confusing Judgment Documents and Communications, and Judgment(s) Entered Without Service*

30.     Before December 2017, Plaintiff had a "Best Buy"-branded personal credit card account          (the          "Account"),          issued          by          Citibank.          *See*

6

https://citiretailservices.citibankonline.com/CRS/acq/launch/index.action?langId=EN&siteId=PL CN_BESTBUY&app=UNSOL&sc=BBYPL#tnc.

31.     At some point prior to December 2017, Citibank charged off and sold the Account to defendant Midland.

32.     On December 18, 2017, Midland filed a lawsuit against Plaintiff in the small Milwaukee County Circuit Court, small claims division. The case was styled: *Midland Funding, LLC v. David Stanaszak*, Case No. 2017sc39815 (the "Collection Lawsuit"). A copy of the CCAP docket for the Collection Lawsuit is attached as Exhibit A.

33.     Upon information and belief, the return date on the summons and complaint in the Collection Lawsuit was January 16, 2018.

34.     Plaintiff was not served with the summons and complaint before January 16, 2018.

35.     Nonetheless, Kohn, on Midland's behalf, allowed the circuit court to enter default judgment against Plaintiff on January 16, 2018. Exhibit A.

36.     Upon information and belief, Kohn, on Midland's behalf, falsely represented to the circuit court that Plaintiff had been properly served with the summons and complaint, and as a direct result, the court entered default judgment against Stanazak. If the circuit court had known that Stanazak had not been served, or if the court determined that whether Plaintiff had been served was in question, the court would have adjourned the Collection Lawsuit instead of entering judgment.

37.     Upon information and belief, on January 30, 2018, the clerk of the circuit court generated and filed a "Judgment/Notice of Entry of Judgment" document for the January 16, 2018 default judgment. A copy of this Notice is attached as Exhibit B.

38.     Exhibit B is dated "January 30, 2018."

39.     Upon information and belief, on or shortly after January 30, 2018, the clerk of the circuit court mailed Exhibit B to Plaintiff. Plaintiff received Exhibit B in the mail within a few days of January 30, 2018.

40.     Upon information and belief, Kohn and Midland are aware that the clerk of the circuit court would mail Exhibit B to Plaintiff after judgment was entered.

41.     Upon information and belief, at Midland and Kohn's request, the small claims court vacated the judgment on February 13, 2018. Exhibit A.

42.     However, on February, 14, 2018, the clerk of the circuit court generated and filed another "Judgment/Notice of Entry of Judgment" document for the January 16, 2018 default judgment that had just been vacated. A copy of this Notice is attached as Exhibit C.

43.     Upon information and belief, on or shortly after February 14, 2018, the clerk of the circuit court generated and mailed Exhibit C to Plaintiff. Plaintiff received Exhibit C in the mail within a few days of January 30, 2018.

44.     Exhibit C is virtually identical to Exhibit B, except Exhibit C is dated "February 14, 2018."

45.     Upon information and belief, on or shortly after February 14, 2018, the clerk of the circuit court generated and mailed Exhibit C to Plaintiff. Plaintiff received Exhibit C in the mail within a few days of February 14, 2018.

46.     Upon information and belief, Kohn and Midland are aware that the clerk of the circuit court would mail Exhibit C to Plaintiff after judgment was entered.

47.     Exhibits B and C were mailed as a result of Defendants' allowing judgment to be entered without obtaining service on Plaintiff. Kohn and Midland are sophisticated attorneys and

8

litigants and are aware that the clerk's office mails notice of entry of judgment to defaulting parties in small claims actions.

48.     Plaintiff was not served with the summons and complaint in the Collection Lawsuit until on or around February 21, 2018. A copy of this summons and complaint is attached as <u>Exhibit D</u>.

49.     <u>Exhibit D</u> attempted to collect the same Midland account – formerly the "Best Buy" credit card account that was the subject of the judgment(s) in <u>Exhibits B and C</u>.

50.     <u>Exhibit D</u> was not served along with a copy of any document or correspondence informing Plaintiff that the judgment or judgments referenced in <u>Exhibits B and C</u> had been vacated.

51.     Neither Kohn nor Midland informed Plaintiff that the judgment or judgments referenced in <u>Exhibits B and C</u> had been vacated.

52.     <u>Exhibits B, C and D</u> are false, misleading and confusing to the unsophisticated consumer.

53.     The unsophisticated consumer, receiving two "notices of entry of judgment" and shortly thereafter being served with a complaint seeking to collect the same debt as in the purported judgment or judgments, would have no idea why he had been served with a complaint on an account that had already been reduced to judgment.

54.     The unsophisticated consumer would likely believe that <u>Exhibit D</u> was served in error and that he need not respond to the complaint, or that there was no point in responding to the complaint because judgment had already been entered.

55.     It is also unclear to the unsophisticated consumer whether <u>Exhibits B and C</u> show that one judgment or two separate judgments had been entered against Plaintiff.

9

56.     It is also unclear to the unsophisticated consumer how any judgments could be entered against Plaintiff when Plaintiff had not been served.

57.     Misrepresentations made to the state court in a collection action violate the FDCPA. *Veach v. Sheeks*, 316 F.3d 690, 692-94 (7th Cir. 2003) (misrepresentation in the summons and complaint); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 471 (7th Cir. 2000) (misrepresentation in the complaint); *Butler v. J.R.S.-I, Inc.*, No. 15 C 6059, 2016 U.S. Dist. LEXIS 45256 (N.D. Ill. Apr. 4, 2016) (misrepresentation to the state court that the complaint had been served when it had not).

### *Phone Calls to Plaintiff's Place of Employment*

58.     Kohn's representatives also began calling Plaintiff's place of employment on or around January 18, 2018.

59.     Plaintiff is a manager at a grocery store in Milwaukee.

60.     Plaintiff is not permitted to make or take personal phone calls at work.

61.     On or around January 18, 2018, a Kohn representative called Plaintiff's store's main telephone number, attempting to call Plaintiff.

62.     A store employee named Myra answered Kohn's telephone call.

63.     Myra told the Kohn employee that Plaintiff could not accept personal phone calls at work.

64.     Despite that information, Kohn representatives continued calling Plaintiff's place of employment daily, and sometimes multiple times per day, between January 18, 2018 and February 18, 2018.

10

65. Kohn's phone calls to Plaintiff's place of employment after Myra told Kohn's employee that Plaintiff could not receive phone calls at work violated the FDCPA as a matter of law. *Horkey v. J.V.D.B. & Assocs.*, 333 F.3d 769 (7th Cir. 2003).

66. As a result of Kohn's repeated calls to his place of employment, Plaintiff suffered emotional distress, including the fear that the calls could cause Plaintiff to lose his job.

## THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 ET SEQ.

67. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

68. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

11

69.     Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

70.     Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

71.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority

12

in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11

13

(11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

72. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

73. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

74. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

75. 15 U.S.C. § 1692c(b) generally prohibits most communications with third parties:

(b) **Communication with third parties**
Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

14

76.     15 U.S.C. § 1692b(5) requires, in turn, that communications with third-parties "not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt."

## THE WISCONSIN CONSUMER ACT
## CHAPTERS 421 TO 427, WIS. STATS.

77.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

78.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

79.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

80.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

15

81.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

82.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

83.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

84.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

85.     Wis. Stat. § 427.104(1)(d) states, in part, that a debt collector may not: "Initiate or threaten to initiate communication with the customer's employer prior to obtaining final judgment against the customer, except as permitted by statute…"

16

86.     Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

87.     Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."  Wis. Admin. Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

88.     Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

## COUNT I - FDCPA

89.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

90.     Defendants allowed default judgment to be entered against Plaintiff in the Collection Lawsuit when Plaintiff had not been served.

91.     Defendants allowed the small claims court to enter default judgment against Plaintiff on January 16, 2018. Exhibit A.

92.     Defendants represented to the small claims court on January 16, 2018 that Plaintiff had been served with the summons and complaint in the Collection Lawsuit when he had not been served.

93.     Plaintiff was not served with a summons and complaint in the Collection Lawsuit until on or around February 21, 2018. Exhibit D.

94.     Defendants violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

17

## COUNT II - FDCPA

95.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

96.     Exhibit D attempted to collect the same Midland account that was the subject of the judgment(s) in Exhibits B and C.

97.     Exhibit D was not served on Plaintiff along with a copy of any document or correspondence informing Plaintiff that the judgment or judgments referenced in Exhibits B and C had been vacated.

98.     Neither Kohn nor Midland sent Plaintiff any document or correspondence, written or oral, informing Plaintiff that the judgment or judgments referenced in Exhibits B and C had been vacated.

99.     Plaintiff was confused by Exhibits B, C and D.

100.    The unsophisticated consumer would be confused by Exhibits B, C and D and by Defendants' failure, intentional or otherwise, to inform Plaintiff that the judgment or judgments referenced in Exhibits B and C were vacated at Defendants' request. Plaintiff would have no idea why he had been served with a complaint on an account that had already been reduced to judgment.

101.    The unsophisticated consumer would likely believe either that Exhibit D was served in error or that responding to the complaint would be futile because judgment had already been entered.

102.    Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10) and 1692f.

18

## COUNT III – FDCPA

103.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

104.     Defendants repeatedly called Plaintiff at his place of employment after being informed that Plaintiff was not permitted to take their calls at work.

105.     As a result of Defendant's calls to Plaintiff's workplace, Plaintiff suffered emotional distress.

106.     Defendants violated 15 U.S.C. §§ 1692c(a)(2), 1692e, 1692e(2)(a), 1692e(10).

## COUNT IV -- WCA

107.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

108.     Defendants repeatedly called Plaintiff at his place of employment after being informed that Plaintiff was not permitted to take their calls at work.

109.     Defendants repeatedly called Plaintiff at his place of employment, including between February 13, 2018 and February 18, 2018, after the void judgment was vacated.

110.     As a result of Defendant's calls to Plaintiff's workplace, Plaintiff suffered emotional distress.

111.     Defendants violated Wis. Stats. §§ 427.104(1)(d), 427.104(1)(g), 427.104(1)(h) and 427.104(1)(j).

## CLASS ALLEGATIONS

112.     Plaintiff brings this action on behalf of two proposed classes.

113.     Class I consists of (a) all natural persons in the State of Wisconsin, (b) who were sued by Midland in a Wisconsin circuit court, (c) with Kohn acting as Midland's attorney, (d)

and default judgment was entered against the person, (e) when Kohn and Midland had not served the summons and complaint on the person or completed service by publication, (f) and Kohn and Midland subsequently vacated the judgment, (g) and Kohn and Midland filed in court and served on the consumer a new complaint seeking to collect the same debt, (h) without informing the consumer that the earlier judgment had been vacated, (i) and which debt was incurred for personal, family, or household purposes, (j) between May 1, 2017 and May 1, 2018, inclusive. Excluded from this class are individuals who were served prior to entry of judgment but who claim that service was defective for reasons other than non-service.

114.    Class II consists of (a) all natural persons in the State of Wisconsin, (b) who Kohn contacted or attempted to contact at the person's place of employment, (c) after being told that the person could not receive such calls at work, (d) seeking to collect a debt for personal, family, or household purposes, (e) between May 1, 2017 and May 1, 2018, inclusive.

115.    The classes are so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each of the classes.

116.    There are questions of law and fact common to the members of each of the classes, which common questions predominate over any questions that affect only individual class members.  The predominant common question is whether the Defendants complied with 15 U.S.C. §§ 1692c(a)(2), 1692e, 1692e(10), and, 1692f.

117.    Plaintiff's claims are typical of the claims of the respective class members.  All are based on the same factual and legal theories.

118.    Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

119.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

120.     Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)      actual damages;

(b)      statutory damages;

(c)      attorneys' fees, litigation expenses and costs of suit; and

(d)      such other or further relief as the Court deems proper.

Dated:  May 1, 2018

**ADEMI & O'REILLY, LLP**

By:      s/ Mark A. Eldridge
          John D. Blythin (SBN 1046105)
          Mark A. Eldridge (SBN 1089944)
          Jesse Fruchter (SBN 1097673)
          Ben J. Slatky (SBN 1106892)
          3620 East Layton Avenue
          Cudahy, WI 53110
          (414) 482-8000
          (414) 482-8001 (fax)
          jblythin@ademilaw.com
          meldridge@ademilaw.com
          jfruchter@ademilaw.com
          bslatky@ademilaw.com

21